FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

MAY 2 2024

BY _____ JM _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
                                  )   No.    **3:24-cr-00093**
    v.                       )
                                    )   18 U.S.C. § 371
PAULO COSTA                )
   a/k/a "Bob"            )

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times material to this Information:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal health care program that provided benefits to individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was subdivided into multiple program "parts." Medicare "Part A" covered, among other things, health services provided by hospitals. Medicare "Part B" covered, among other things, medical items and services provided by physicians, medical clinics, laboratories, and other qualified health care providers. Medicare "Part D" covered or subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.

3.     To receive Medicare Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private health insurance companies approved by

Medicare. Those companies were often referred to as Medicare drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the cost of the prescription.

4. Medicare and Medicare drug plan sponsors were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b), and a "federal health care program," as defined in Title 42, United States Code, Section 1320a-7b.

5. A pharmacy could participate in Medicare Part D by entering into a retail network agreement with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the Medicare drug plan sponsor or to a PBM that represented the beneficiary's Medicare drug plan. The Medicare drug plan sponsor or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The Medicare drug plan sponsor reimbursed the PBM for its payments to the pharmacy.

6. A pharmacy could also submit claims to a Medicare drug plan sponsor whose network the pharmacy did not belong to. The submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the Medicare drug plan sponsor.

7. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a

2

sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

## The Defendant and Related Entities and Individuals

8.     MILLENNIUM RX CORP ("Millennium Pharmacy") was a pharmacy located in the Middle District of Tennessee at 3384 Mt. Juliet Road, Suite 1000, Mount Juliet, Tennessee, and licensed as a retail pharmacy in Tennessee.

9.     ASPIRE PHARMACY LLC ("Aspire Pharmacy") was a pharmacy located in the Middle District of Tennessee at 907 Rivergate Pkwy, E-9, Goodlettsville, Tennessee.

10.     TOP MANAGEMENT CONSULTING LLC ("Top Management Consulting") was a limited liability company with a principal office of 11380 Prosperity Farms Road #221E, Palm Beach Gardens, Florida.

11.     Defendant **PAULO COSTA** was a resident of Palm City, Florida, and was a beneficial owner of Millennium Pharmacy and Aspire Pharmacy.

12.     MARK J. W. CARR was a resident of Light House Point, Florida, and was a beneficial owner of Millennium Pharmacy and Aspire Pharmacy.

## COUNT ONE

13.     Paragraphs 1 through 12 are re-alleged and incorporated by reference as though fully set forth herein.

14.     From in or around September 2018 and continuing through in or around August 2021, in the Middle District of Tennessee and elsewhere, **PAULO COSTA** did willfully and knowingly combine, conspire, confederate, and agree with MARK J. W. CARR, and others known and unknown to the United States Attorney to commit certain offenses against the United States, that is:

3

a. To violate Title 18, United States Code, Section 1347, by knowingly and willfully executing a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

b. to violate Title 42, United States Code, Sections 1320a-7b(b)(1)(A)&(B), by knowingly and willfully soliciting and receiving remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare and Medicare drug plan sponsors; and

c. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A)&(B), by knowingly and willfully offering and paying remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item or service for which

4

payment may be made in whole or in part a Federal health care program, that is, Medicare, and Medicare drug plan sponsors, and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare and Medicare drug plan sponsors.

## Purpose of the Conspiracy

15. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) paying kickbacks and bribes to telemedicine companies and marketing companies in exchange for prescriptions bearing physicians' signatures; (b) submitting and causing the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors through Millennium Pharmacy for prescription medications that were not medically necessary and not eligible for reimbursement; (c) concealing and causing the concealment of false and fraudulent claims to Medicare and Medicare drug plan sponsors; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means

16. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

17. **PAULO COSTA, MARK J. W. CARR,** and their co-conspirators acquired and operated multiple pharmacies, including Millennium Pharmacy and Aspire Pharmacy.

18. **PAULO COSTA, MARK J. W. CARR,** and their co-conspirators caused pharmacies, including Millennium Pharmacy and Aspire Pharmacy, to sign retail network agreements with various Medicare drug plan sponsors. By entering into these agreements, **PAULO COSTA, MARK J. W. CARR,** and their co-conspirators knew that the pharmacies, including

5

Millennium Pharmacy and Aspire Pharmacy, were required to comply with federal laws regarding the dispensing of prescription drugs.

19. **PAULO COSTA, MARK J. W. CARR**, and their co-conspirators purchased and caused to be purchased "patient leads," or lists containing the personally identifiable information ("PII"), such as names and telephone numbers, for Medicare beneficiaries.

20. **PAULO COSTA, MARK J. W. CARR**, and their co-conspirators used call centers to contact these Medicare beneficiaries to encourage them to accept prescriptions for certain pre-selected, highly reimbursable medications, without regard to the actual medical necessity of those prescription medications.

21. **PAULO COSTA, MARK J. W. CARR**, and their co-conspirators paid kickbacks and bribes to telemedicine companies and marketing companies to obtain prescriptions bearing physicians' signatures for those Medicare beneficiaries that **PAULO COSTA, MARK J. W. CARR**, and others contacted through the call centers.

22. **PAULO COSTA, MARK J. W. CARR**, and their co-conspirators submitted and caused to be submitted false and fraudulent claims to Medicare and Medicare drug plan sponsors through Millennium Pharmacy for prescription medications that were procured through kickbacks and bribes, not medically necessary, and not eligible for reimbursement.

23. As a result of such false and fraudulent claims, Medicare and Medicare drug plan sponsors, through their PBMs, made over $9 million in payments to Millennium Pharmacy that were funded by the Medicare Part D program.

24. **PAULO COSTA, MARK J. W. CARR**, and their co-conspirators diverted fraud proceeds from the scheme for their personal use and benefit, the use and benefit of others, and to further the fraud.

6

## OVERT ACTS

25. In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Tennessee and elsewhere, at least one of the following overt acts, among others:

A. On or about September 26, 2018, **PAULO COSTA** caused an authorized representative to register Top Management Consulting as a limited liability company with the State of Florida;

B. On or about September 27, 2018, Millennium Pharmacy registered as a for profit corporation with the State of Tennessee;

C. Between in or around March 2020 and in or around June 2020, Millennium Pharmacy submitted approximately seventeen claims for prescriptions to Medicare for Medicare beneficiary and New York resident G.M., and was paid a total of approximately $28,913;

D. Between in or around March 2020 and in or around June 2020, Millennium Pharmacy, submitted approximately seven claims to Medicare for prescriptions for Medicare beneficiary and Georgia resident M.W., and was paid a total of approximately $21,228;

E. Between in or around September 2019 to in or around October 2020, **PAULO COSTA** and MARK J. W. CARR transferred and caused to be transferred approximately $5.1 million from Millennium Pharmacy bank accounts to the accounts of Company #1 and Company #2 owned and controlled by **PAULO COSTA** and MARK J. W. CARR;

F. Between in or around September 2019 to in or around October 2020, **PAULO COSTA** and MARK J. W. CARR transferred and caused to be transferred approximately $1.97 million from Company #1 and Company #2 owned and controlled by **PAULO COSTA** and MARK J. W. CARR to Top Management Consulting owned and controlled by **PAULO COSTA**;

7

G.      On or about April 3, 2020, **PAULO COSTA**, MARK J. W. CARR, and their co-conspirators sent and caused to be sent a domestic wire transfer from Company #1 to a co-conspirator marketing company for $13,156;

H.      On or about May 19, 2020, **PAULO COSTA**, MARK J. W. CARR, and employees of Millennium Pharmacy engaged in a text messaging chat that discussed the operation and management of Millennium Pharmacy, during which **PAULO COSTA** directed others on billing pharmacy claims to Medicare and included a message from **PAULO COSTA** instructing a Millennium employee to "[r]everse and bill tomorrow" certain claims to a particular Medicare Part D drug plan;

I.      On or about August 17, 2020, **PAULO COSTA** sent MARK J. W. CARR a Partnership Agreement to memorialize their partnership in Company #1;

J.      In or around August 2020, **PAULO COSTA** and MARK J. W. CARR formed Aspire Pharmacy;

K.      In or around November 2020, **PAULO COSTA** and MARK J. W. CARR closed Millennium Pharmacy;

L.      On or about December 9, 2020, **PAULO COSTA** emailed MARK J.W. CARR and another individual about questions posed by a pharmacy services administrative organization about the operations of a pharmacy, and **PAULO COSTA** wrote, "I would be more vague," with all answers and that, "[a]ny and all prescription requests are walk in or faxed to the pharmacy," in response to a question about obtaining out-of-state patients;

M.      In or around August 2021, **PAULO COSTA** and MARK J. W. CARR sold Aspire Pharmacy.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

26.     The allegations of this information are re-alleged and incorporated by reference as though fully set forth herein for purposes of alleging forfeiture to the United States of certain property in which the defendant has an interest.

27.     Upon conviction of a criminal conspiracy to commit a violation of Title 18, United States Code, 1347 or Title 42, United States Code, Section 1320a-7b, as alleged in this Information, **PAULO COSTA** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

28.     The property subject to forfeiture includes, but is not limited to, the sum of money equal in value to the gross proceeds traceable to the commission of the violation alleged in this Information, which the United States will seek as a forfeiture money judgment as part of each defendant's sentence.

29.     If any of the above-described forfeitable property, as a result of any act or omission of **PAULO COSTA**:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of **PAULO COSTA**.

HENRY C. LEVENTIS
UNITED STATES ATTORNEY

ROBERT S. LEVINE
SARAH K. BOGNI
ASSISTANT UNITED STATES ATTORNEYS