UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:24-CR-00093 |
| v. | ) | |
| | ) | CHIEF JUDGE CAMPBELL |
| PAULO COSTA | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America the United States of America, through Braden H. Boucek, United States Attorney, and Sarah K. Bogni, hereby files this memorandum in aid of sentencing, in anticipation of the defendant's upcoming sentencing hearing, currently scheduled for April 28, 2026.

**I.      Procedural History**

On May 2, 2024, the United States charged defendant by Information with one count of conspiracy to commit certain offenses against the United States: (1) health care fraud by defrauding the Medicare program administered by the United States Department of Health and Human Services, and (2) violations of the Anti-Kickback Statute. (D.E. 3.) On May 23, 2024, defendant pleaded guilty to the single count of conspiracy. (D.E. 25.) The parties entered into a Plea Agreement.[1] (D.E. 25). The defendant is currently scheduled to be sentenced on April 28, 2026.

---

[1] A co-conspirator of Costa was charged and pleaded guilty as part of the same conspiracy and scheme. *United States v. Mark J.W. Carr*, Case No. 3:23-cr-00021. Carr is scheduled to be sentenced on April 30, 2026.

The Presentence Investigation Report ("PSR") was prepared on April 10, 2025, and revised for a second time on March 27, 2026.

## II.    Background

Medicare is a taxpayer funded health care benefit program designed to care for the elderly and infirm. To provide timely care to its beneficiaries, the program pays claims upon receipt and trusts those submitting claims to comply with the law. The program relies on the honesty and integrity of the individuals and providers who are involved in delivering health care to program beneficiaries. Over 68 million Americans are Medicare beneficiaries.[2] This number includes some of the most vulnerable of our citizens.

Medicare is subdivided into multiple "parts." PSR ¶ 10. Part D covers pharmacy benefits. *Id*. at 10-13. Pharmacies contract with various Part D plan sponsors and agree to abide by the rules of the Medicare program, including that they will only bill for items that are medically necessary and will not pay kickbacks for referrals. *Id*. at 17; D.E. 25 at p. 4-6.

The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), is a criminal statute that makes it illegal to solicit, offer, pay, or receive kickbacks or bribes in exchange for referring Medicare or Medicaid patients for items or services that may be payable by a federal health care program. The purpose of the law is to ensure that decisions about patient care are based on the actual medical needs of a patient and not influenced by improper motives such as by bribes or kickbacks. The defendant knew that the payment or acceptance of kickbacks in return for referring patients or services is illegal under the AKS and that services and items must be reasonable and

---

[2] *See* https://data.cms.gov/summary-statistics-on-beneficiary-enrollment/medicare-and-medicaid-reports/medicare-monthly-enrollment.

necessary for the diagnosis or treatment of an illness or injury or to improve the functioning of a malformed body member. 42 U.S.C. § 1395y(a)(1)(A); PSR ¶¶ 15-17; D.E. 25 at 4-5.

The defendant and his co-conspirator Mark Carr, both operating from where they live in south Florida, ran pharmacies, including in the Middle District of Tennessee, that billed for high reimbursing topical creams that the defendants knew patients did not want or need. (D.E. 25 at 4-5.) To obtain patient information and doctors' orders, the defendant and his co-conspirators sometimes used telemedicine and marketers and paid kickbacks for the information. PSR ¶¶ 16, 26, 37, and 48-49. In order to conceal their scheme, they did not collect co-payments from the patients for the medications, they intentionally established thresholds of billing Part D plan sponsors in order to avoid audits that would uncover the fraud, and defendant used the alias "Bob" to conceal his true identity from pharmacy employees. PSR ¶¶ 35-37, 40. Despite these efforts, many Medicare beneficiaries complained to pharmacy employees about receiving medications they did not want and did not order. PSR ¶ 37. Some complained that they did not know the ordering physician. PSR ¶ 32. Doctors also complained to pharmacy employees that they did not order the medications. PSR ¶ 37. When employees questioned the defendant about the pharmacy operation, he told them they could leave. *Id*. Eventually, Medicare Part D plan sponsors terminated the agreements with the pharmacies. *Id*. at 31. By that point, Medicare Part D plan sponsors paid the Tennessee based pharmacies over $9 million for fraudulent prescriptions patients did not need or want. The United States began investigating. When defendants became aware employees were

3

interviewed by law enforcement, the employees' access to pharmacy networks was terminated. *Id*. at 35.

### III.     Sentencing Guideline Calculation

The calculation of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is important because while the Guidelines are advisory, sentences falling within those guidelines "are generally presumed to be reasonable." *United States v. Muchow*, 924 F.3d 272, 275 (6th Cir. 2019); *see also United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (The presumption arises from the "confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge, [and] that 'double determination significantly increases the likelihood that the sentence is a reasonable one.'" (citation omitted)).

The PSR, as revised, calculates a total offense level of 29 and a Criminal History Category of I, which results in an advisory custodial range of 87 to 108 months. PSR ¶¶ 78, 105. The United States does not object to the PSR other than to note the parties, consistent with their plea agreement, did not recommend an abuse of trust enhancement.  Removing that enhancement the total offense level is 27, with an advisory custodial range of 70 to 87 months. PSR, *Second Addendum*. The statutory maximum for the charged offense is 60 months. PSR ¶ 105.

### IV.     Sentencing Factors

Pursuant to Title 18, United States Code, Section 3553(a), a court shall consider the following factors, among others, when sentencing a defendant: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement issued by the Sentencing

4

Commission; (6) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (7) the need to provide restitution to any victims. This memorandum addresses the Section 3553(a) factors relevant to this case.

A.      The Nature and Circumstances of the Offense

The factual basis in the Plea Agreement and the Offense Conduct section of defendant's PSR laid out the nature of the offense of conviction and the defendant's role in it. (D.E. 25 at 4-6); PSR ¶¶ 15-63. The United States incorporates by reference those portions of the Plea Agreement and the PSR as if they were fully stated herein.

At its core, the conduct in this case is about exploiting the elderly for their private information, sending them medical items they do not want and did not need, and then billing their insurance for the products, leaving the elderly to call the defendant's pharmacy, hotlines, and insurance companies to complain. This scheme relies on taking advantage of the most vulnerable among us, at scale, and at the expense of taxpayers. The defendant's conduct—to which he has pleaded guilty—is serious. Defendant operated pharmacies that misused patient information in order to intentionally defraud Medicare of millions of dollars. The defendant knew that the medications dispensed and mailed by the pharmacies did not meet Medicare's medical necessity requirements and were otherwise not eligible for reimbursement because the orders were procured by the payment of kickbacks. Ultimately, the defendant and his co-conspirator Carr caused Medicare to pay over $9 million in fraudulent claims and converted those taxpayer dollars for their personal use.

B.      The History and Characteristics of the Defendant

The defendant is a 38-year-old man. PSR ¶¶ 85-96. Born in Brazil, he is a naturalized United States citizen and has a wife and young son. *Id*. His mother raised him in a loving home

5

and supported him throughout his childhood through her hard work and physical labor owning a cleaning business in south Florida. *Id*. He does not appear to have ever suffered from drug or alcohol problems and appears to be in good health. *Id*. He obtained a GED and has worked various jobs since the time he was a teenager. *Id*. The PSR evidences no reason the defendant may have committed this crime other than for greed. *Id*.

  C. <u>The Need for the Sentence Imposed</u>

  This factor requires the Court to consider "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to afford adequate deterrence," "to protect the public from further crimes of the defendant," and to provide the defendant with "correctional treatment." 18 U.S.C. § 3553(a)(2).

  Medicare fraud is "rampant"; it undermines the ability to care for society's most vulnerable members and thus requires serious punishment. *See United States v. Kuhlman*, 711 F.3d 1321, 1324, 1328 (11th Cir. 2013) (finding that downward variance of 57 months from the bottom of the Guidelines to time served for chiropractor who falsely billed insurance companies for services he knew were not rendered to his patients was substantively unreasonable). General deterrence is a particularly important consideration in this type of case. *See United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) (finding that a sentence for white-collar crime must reflect the need for general deterrence because these crimes are "especially susceptible to general deterrence"); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 WM. & MARY L. REV., 721, 724 (2005))).

6

In addition to the need to promote general deterrence, there is also concern here for specific deterrence of this defendant. The defendant continues to be employed by his own management consulting company that was a party to the fraudulent scheme. PSR ¶¶ 41, 59, 97. The PSR does not describe what kind of work defendant actually does through this company – of which he is the sole owner – to earn the reported monthly income. There is also a lack of information as to what constitutes his "business income." PSR ¶ 99. This vague information leaves the United States concerned that the defendant was not fully forthright with Probation about his sources of income, including whether the income is from legitimate sources and legitimate work. The defendant's representations of his employment to Probation may be intentionally vague in order to conceal his current activities, especially if they involve any connection to federal health care programs. He also failed to report his wife's income. While it may be the case that she does not earn much income due to health issues, the failure to report to Probation leaves it possible that unreported businesses are listed in his wife's name that remain unreported.[3]

Catching someone who has committed health care fraud is rare. So, where a perpetrator is caught, "one of the primary objectives of the sentence is to send a message to other health care providers that [healthcare] fraud is a serious crime that carries with it a correspondingly serious punishment." *Kuhlman*, 711 F.3d at 1328. Here, the defendant chose money over patient care, at the expense of the most vulnerable in our society. There is a need to deter both this defendant and others from similarly exploiting Medicare.

---

[3] During the course of the conspiracy payments were made from defendant's business into his wife's personal bank account.

D.     The Need to Avoid Unwarranted Sentence Disparity

"In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (finding that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). "One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes." *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008). Thus, a term of imprisonment will go a long way to ensuring that the defendant's sentence is consistent with other, similarly-situated defendants.

E.     The Need to Provide Restitution to Any Victims

Pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), restitution is required in this case, *see* 18 U.S.C. § 3663(a)(1) & (c)(1)(B). The PSR provides that the MVRA requires total restitution in the amount of $9,049,703. PSR ¶ 116.

## V.     Conclusion

For the reasons set forth above, the United States respectfully requests a sentence that is sufficient, but not greater than necessary, when considering the factors set forth in 18 U.S.C. § 3553(a), a mandatory special assessment of $100, and an order of restitution in the amount of $9,049,703.

Respectfully submitted,

8

BRADEN H. BOUCEK
United States Attorney
Middle District of Tennessee

BY: */s/ Sarah K. Bogni*
SARAH K. BOGNI
Assistant U. S. Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: (615) 736-5151

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing will be served electronically to counsel for defendant, via CM/ECF on the 20th Day of April, 2026.

/s/ Sarah K. Bogni
Sarah K. Bogni
Assistant U.S. Attorney

10